**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER R. BRITTON, | ) | CASE NO. 1:18-cv-39 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Jennifer R. Britton (hereinafter "Plaintiff"), challenges the final decision of

Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter

"Commissioner"), denying her applications for a Period of Disability ("POD"), Disability

Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI

of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has

jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States

Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and

Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the

Commissioner's final decision be AFFIRMED.

## I. Procedural History

On September 4, 2014, Plaintiff filed her applications for POD, DIB, and SSI, alleging a disability onset date of January 1, 2010. (Transcript ("Tr.") 144-154). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 78-114). Plaintiff participated in the hearing on July 28, 2016, was represented by counsel, and testified. (Tr. 41-77). A vocational expert ("VE") also participated and testified. *Id*. On October 5, 2016, the ALJ found Plaintiff not disabled. (Tr. 29). On November 6, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). On January 5, 2018, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 12, 13 & 14).

Plaintiff asserts the following assignments of error: (1) the ALJ failed to properly consider the opinion of nurse Robin Krause, and (2) the ALJ failed to properly consider the opinion of a State Agency medical consultant. (R. 12, PageID# 2167).

## II. Evidence[1]

### A. Relevant Medical Evidence

#### 1. Treatment Records

On January 11, 2013, Plaintiff began seeing advanced practice registered nurse ("APRN") Robin Krause. (Tr. 665-666). On that date, Plaintiff was seen for an initial psychiatric evaluation. (Tr. 665). Plaintiff stated that her depression "had been a problem over the last year," and that

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised. The court also foregoes any discussion of Plaintiff's hearing testimony, as the credibility determination has not been challenged.

she suffered from anxiety since 2000. *Id*. On mental status examination:

> The patient is alert and oriented x4. She has casual dress, hygiene adequate. She is overweight. Her speech has normal tone, volume, and speed. Thoughts are logical. No auditory or visual hallucinations. No delusional thoughts. Her mood was depressed, anxious. Affect constricted. Behavior was cooperative. No suicidal or homicidal ideas. Insight, judgment, and reasoning are fair. She has some memory holes with regard to her childhood. Her cognition appears to be intact. Average intelligence and average vocabulary. She abstracts proverbs without difficulty. No history of mania. No history of psychosis. She does have a history of cutting as a teenager between 13 and 15 years old. There are not really any serious OCD symptoms; she said she is very organized and orderly, but not to an extreme. No weapons at home. No excessive pills at home.

(Tr. 666). Nurse Krause diagnosed generalized anxiety disorder, depressive disorder, and history of polysubstance abuse. *Id*. She was assigned a Global Assessment of Functioning ("GAF") score of 55, indicative of moderate symptoms.[2] (Tr. 667).

On January 30, 2013, Plaintiff reported to nurse Krause "decreased raging," better control of her emotions, and a 15-20% reduction of depression with medication. (Tr. 664). She was assigned a GAF score range of 55 to 60. *Id*.

On March 8, 2013, Plaintiff told nurse Krause that her medication was helping and stated that she had decreased mood swings and "no raging." (Tr. 663). She was diagnosed with generalized anxiety disorder and depressive disorder, improved. *Id*. She was assigned a GAF score range of 55 to 60. *Id*.

On May 4, 2013, Plaintiff's condition was largely unchanged. She had lost 17 pounds, and

---

[2] The GAF scale reports a clinician's assessment of an individual's overall level of functioning. *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Ass'n, 4th ed. revised, 2000) ("DSM-IV"). An individual's GAF is rated between 0-100, with lower numbers indicating more severe mental impairments. A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* DSM IV at 34. An update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Ass'n, 5th ed., 2013).

her mood was anxious. Nurse Krause assessed an unchanged GAF score. (Tr. 662).

On June 21, 2013, Plaintiff told nurse Krause she had lost her job due to back pain and was "sad over this situation." (Tr. 661). She reported looking for other job opportunities that required less time on her feet and less lifting. *Id*. She stated medication helped her mood and reported no side effects. *Id*. Her GAF score remained unchanged. *Id*.

On August 1, 2013, Plaintiff reported anxiety and depression for the past two weeks, sleeping ten to twelve hours nightly, and the recent death of her dog. (Tr. 659). Nurse Krause adjusted her medications and continued to assess a GAF score of 55 to 60. *Id*.

On November 2, 2013, Plaintiff's chief complaint was "feeling depressed, overwhelmed and having trouble functioning." (Tr. 657). She reported missing work the previous week. *Id*. On mental status examination, nurse Krause found Plaintiff was alert and oriented x3, no agitation or irritability, constricted affect, depressed mood and anxiety, monotone speech with normal cadence, logical and coherent thoughts, no auditory or visual hallucinations, no delusions, no suicidal or homicidal ideas, and intact judgment, reasoning, memory, attention and concentration, and fund of knowledge. *Id*. Krause adjusted Plaintiff's medications to include Viibryd. (Tr. 658).

The same month, on November 27, 2013, Plaintiff reported a 40% decrease in depression and increased functioning with her adjusted medications. (Tr. 656). On examination, nurse Krause found Plaintiff was less depressed, had a full affect, and normal speech. *Id*. Her medications were continued unchanged. *Id*.

On December 17, 2013, Plaintiff stated that Viibyrd was "really helping her mood." (Tr. 655). She was cheerful, had no tearfulness, and no feelings of hopelessness or helplessness. *Id*. Her mental status examination was unremarkable, and nurse Krause found Plaintiff to be "non-

depressed" with "no anxiety." *Id*.

On June 30, 2014, Plaintiff reported severe anxiety and isolating at home, noting that a significant other was verbally abusive but helped financially. (Tr. 654). Nurse Krause increased Plaintiff's Abilify dosage and weaned her off Celexa. *Id*. Plaintiff discontinued Trazadone on her own stating it caused nocturnal incontinence. *Id*.

On July 28, 2014, Plaintiff reported depression, anxiety, and excessive sleep despite the increase in Abilify, stating that she had trouble leaving the house unaccompanied. (Tr. 652). Nurse Krause weaned Plaintiff off Abilify and reduced Viibryd, while starting a prescription for Latuda. *Id*.

On September 4, 2014, Plaintiff felt her depression was worse with Latuda, and reported not leaving the house. (Tr. 650). Nurse Krause noted Plaintiff was anxious, sad, and tearful. *Id*. Krause ordered her to wean off Latuda and Viibryd and begin Zoloft. *Id*.

On October 21, 2014, Plaintiff reported that Zoloft was helping, and she was able to do more around the house. (Tr. 968). Nurse Krause increased Zoloft. *Id*.

On November 25, 2014, Plaintiff reported Zoloft helped her initially, but she became more depressed again over the last two to three weeks. (Tr. 966). Nurse Krause increased Zoloft. *Id*.

On December 16, 2014, Plaintiff reported picking at her skin, chewing on the inside of her mouth more, depression, and decreased energy. (Tr. 964). It was noted that Plaintiff sees Carol Fox two to three times per month. *Id*. Krause decreased Zoloft and started a prescription for Brintellix. *Id*. She noted prescriptions for Paxil and Celexa lost effectiveness in the past. *Id*.

On January 9, 2015, Plaintiff reported Brintillex was somewhat helpful having actually laughed twice, but she persisted picking at her skin and biting her cheeks, showered only twice per week, and showed no interest in hobbies. (Tr. 1031-1032). Nurse Krause increased the

dosage of Brintellix. *Id*.

On March 23, 2015, Plaintiff reported feeling less depressed with improved energy and interest in activity. (Tr. 1047). She also reported an inability to focus or concentrate, and anxiety upon leaving the house. *Id*. She reported receiving her second denial for social security disability benefits. *Id*. Plaintiff stated she found counseling with Christina Fowler to be helpful. *Id*. Nurse Krause continued Plaintiff's medication, adding Vyvanse to her prescription regimen. (Tr. 1048).

On April 16, 2015, Plaintiff stated that her insurance will not pay Vyvanse. (Tr. 1055). Plaintiff was less depressed and felt slightly improved. *Id*.

On May 7, 2015, Plaintiff reported that she felt "more emotionless" with Prozac, but was improved on Brintellix and Vyvanse. (Tr. 1202). Nurse Krause noted that Plaintiff was setting goals and had more interest in achieving them. *Id*.

On May 26, 2015, Plaintiff reported to nurse Krause improvement on medications. (Tr. 1211).

On June 15, 2015, nurse Krause again noted Plaintiff's improvement with medication and lack of tearfulness. (Tr. 1218). Her medications were adjusted. *Id*.

On June 23, 2015, on mental status examination, nurse Krause noted that Plaintiff was alert and oriented x 3, had a mildly irritable mood and affect and was embarrassed over the events of the past weekend, had normal speech and was coherent, had linear thought process and no loose associations, had no psychosis, had fair insight and memory, and had an adequate fund of knowledge. (Tr. 1220-1223). Plaintiff explained that she had made a comment about shooting herself while irritated, and thought her family overreacted. (Tr. 1225). She denied any plans to harm herself. (Tr. 1225). Plaintiff again reported feeling improved with medication, and her prescription for Vyvanse was decreased while her prescriptions for Brintellix and Xanax were

maintained. *Id*.

On July 17, 2015, Plaintiff reported to nurse Krause doing better with her current prescriptions, and her medications were continued unchanged. (Tr. 1232-1233).

On August 17, 2015, Plaintiff informed nurse Krause she was doing better with her current prescriptions, going outside more, and enjoying her dogs. (Tr. 1239-1240).

On September 14, 2015, Plaintiff reported that her attention and concentration improved with Vyvanse, but wanes by 4 p.m. (Tr. 1243). On mental status examination, her mood and affect were improved by medication, her speech was monotone, her language was coherent, her thought process was linear with no loose associations, and her memory, fund of knowledge, insight, and judgment were all fair. (Tr. 1243-1244). Nurse Krause adjusted her medications to increase Vyvanse. (Tr. 1246).

On October 8, 2015, nurse Krause noted mild improvement on medications. (Tr. 1281). Plaintiff stated that she was better organized, that Vyvanse was helping, that her reading and comprehension had improved, and that she was more functional at home. *Id*. She stated, "I feel depressed but not suicidal. I feel no joy about anything." *Id*.

On November 10, 2015, nurse Krause's mental status examination revealed Plaintiff's mood and affect were improved mildly by medication, her attention and concentration were intact, her speech was coherent but monotone, her thought process was linear with no loose associations, and her memory, fund of knowledge, insight, and judgment were all fair. (Tr. 1285-1286). Plaintiff reported mild improvement. (Tr. 1288).

On January 8, 2016, Plaintiff was anxious with mood swings but without suicidal/homicidal ideation. (Tr. 1301). Her attention and concentration were fair, her speech was normal but monotone, her thought process was linear but with "racing, busy mind," and her memory, fund

7

of knowledge, insight, and judgment were all fair. (Tr. 1301-1302). Nurse Krause increased

Lamictal and decreased Vyvanse. (Tr. 1305).

On February 12, 2016, nurse Krause noted Plaintiff was sad, anxious, and irritable, with an

anxious tone in her speech. (Tr. 1317). Her attention and concentration, memory, fund of

knowledge, insight, and judgment were all fair. (Tr. 1317-1318). She related having a panic

attack while at a store with her family the previous Sunday. (Tr. 1321). Nurse Krause increased

Plaintiff's Lamictal medication, and entered a diagnosis of bipolar affective disorder, mixed,

unspecified. (Tr. 1321, 1975).

On February 26, 2016, nurse Krause entered a diagnoses of borderline personality disorder.

(Tr. 1975). She reported experiencing no panic attacks since beginning Seroquel XR. *Id.*

On April 11, 2016, Plaintiff reported feeling less depressed, but anxious and irritable. (Tr.

1957-1958).

On June 13, 2016, Plaintiff was seen by Christina Canella, CNP. (Tr. 1947-1950). Plaintiff

wanted to transfer care from nurse Krause because "she felt she had to[] wait to[o] long in the

lobby to see her most previous prescriber." (Tr. 1947). Plaintiff reported hating herself, life, and

people, but not her children or pets. She stated she cried daily. *Id.*

### 2.  Medical Opinions Concerning Plaintiff's Functional Limitations

On October 14, 2014, State Agency physician Diane Manos, M.D., reviewed the evidence

of record and opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently;

could stand/walk for six hours and sit for six hours; could frequently climb ramps/stairs, balance,

stoop, kneel, crouch, and crawl; and could occasionally climb ladders/ropes/scaffolds. (Tr. 84,

Exh. 2A). She indicated that Plaintiff had no manipulative, visual, communicative, or

environmental limitations. (Tr. 85, Exh. 2A).

On October 22, 2014, State Agency psychologist Patricia Semmelman, Ph.D., reviewed the evidence of record and found that Britton had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. She opined that Britton was only partially credible concerning her psychological condition, because Plaintiff claimed "anxiety prevents her from leaving home most of the time, yet she grocery shops in stores once a week." (Tr. 82-83, Exh. 2A). She further opined that Plaintiff had no understanding and memory limitations; was not significantly limited in her ability to sustain concentration and persistence except for moderate limitations in her ability to carry out detailed instructions and in her ability to complete a normal workday and workweek without interruption from psychologically based symptoms; was not significantly limited in her ability to engage in social interaction except for moderate limitations in her ability to deal with the general public;[3] was not significantly limited in her ability to adapt except for moderate limitations in her ability to respond appropriately to changes. (Tr. 85-87, Exh. 2A).

On February 2, 2015, on reconsideration, State Agency physician Stephen Sutherland, M.D., reviewed the evidence of record and opined that Plaintiff had the same exertional limitations as noted above by Dr. Manos. (Tr. 97, Exh. 4A). With respect to postural limitations, Dr. Sutherland opined that Plaintiff could occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl, but never climb ladders/ropes/scaffolds. (Tr. 97-98, Exh. 4A). He opined that Plaintiff had limited ability to reach overhead in any direction, but could handle, finger, and feel in an

---

[3] Dr. Semmelman explained that "[claimant] is limited to routine tasks," "tasks not involving close work with others," (Tr. 86) and "to tasks where work duties remain static." (Tr. 87).

unlimited manner.[4] (Tr. 98, Exh. 4A). With respect to environmental limitations, Dr. Sutherland

found that Plaintiff should avoid concentrated exposure to extreme cold, vibration, and hazards.

(Tr. 98-99).

On February 7, 2015, State Agency psychologist Vicky Warren, Ph.D., offered an opinion

nearly identical to Dr. Semmelman. (Tr. 99-101, Exh. 4A).

On May 17, 2016, nurse Krause wrote a letter indicating that Plaintiff had been diagnosed

with bipolar disorder and that she felt Plaintiff was "unable to work." (Tr. 1375, Exh. 21F).

On July 15, 2016, nurse Krause completed a checklist assessment of Plaintiff's abilities to

perform mental work-related activities. (Tr. 2038-2039, Exh. 31F). Nurse Krause checked boxes

indicating that Plaintiff had marked limitations in most areas and moderate limitations in a few

others. *Id*. She indicated these limitations had persisted since at least January 1, 2010. (Tr. 2039).

She indicated that Plaintiff had not obtained a psychiatric or psychological evaluation, but sees a

licensed therapist. *Id*. Nurse Krause indicated that Plaintiff's medications improve her

functioning. *Id*. Nurse Krause also checked boxes indicating that Plaintiff would deteriorate

under the stress of employment and that she would miss more than three days of work per month.

*Id*. The form contains no explanation for any of the above assessed limitations save for a

diagnosis of "Bipolar, mixed F 31.60." (Tr. 2038-2039).

On July 25, 2016, nurse Krause completed an "Off-Task / Absenteeism Questionnaire." (Tr.

2071, Exh. 36F). Therein, she checked a box indicating that Plaintiff would be off-task at least

20 percent of the time since November 1, 2013. *Id*. She indicated that the following mental and

physical impairments contributed to this limitation: bipolar disorder, borderline personality traits,

---

[4] Dr. Sutherland explained that Plaintiff could perform "Occ overheard reaching d/t cervical
HNP." (Tr. 98, Exh. 4A).

mood swings, and racing thoughts. *Id*. She checked a box indicating that Plaintiff had an

"[i]nability to concentrate, pay attention and/or focus on a sustained basis." *Id*. Her entire

explanation was that "patient has severe anxiety, irritability which interfere with ability to focus

+ attend." *Id*. Finally, without explanation, nurse Krause checked a box indicating that Plaintiff's

impairments would cause about three absences per month. *Id*.

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes

disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of

Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when

she cannot perform "substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§

404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage

process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First,

the claimant must demonstrate that she is not currently engaged in "substantial gainful activity"

at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the

claimant must show that she suffers from a medically determinable "severe impairment" or

combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c)

and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental

ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not

performing substantial gainful activity, has a severe impairment (or combination of impairments)

that is expected to last for at least twelve months, and the impairment(s) meets a listed

impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2017.

2. The claimant has not engaged in substantial gainful activity since November 1, 2013, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spines; radiculopathy; morbid obesity, depression, anxiety, and remote history of cocaine and cannabis abuse (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except that the claimant can frequently handle, finger, and use hand controls with the bilateral upper extremities. She can occasionally balance, kneel, stoop, crouch, crawl, and use ramps and stairs but never use ladders, ropes, or scaffolds. She must avoid hazards such as heights or machinery but is able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles. She is limited to simple,

routine, repetitive tasks involving simple, work-related decisions. She can have occasional interaction with a small group of coworkers where the contact is casual in nature. She can have occasional, superficial interaction with the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on [***] 1974 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2013, the amended alleged onset date, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 22-28).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look

into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

## B.  Plaintiff's Assignments of Error

### 1. Nurse Practitioner

In the first assignment of error, Plaintiff asserts that the ALJ erred by ascribing little weight to the opinions of nurse Krause, an Adult-Gerontology Primary Care Nurse Practitioner. (R. 12, PageID# 2168-2170).

Pursuant to the regulations in effect at the time the ALJ rendered the opinion on October 5, 2016, nurse practitioners are not included among the five identified types of "acceptable medical sources," but rather are considered "other sources." *Compare* former 20 C.F.R. §§ 404.1513(a) & 416.913(a) with former 20 C.F.R. §§ 404.1513(d)(1) & 416.913(d)(1). While recent revisions to the regulations now include licensed advanced practice registered nurses among the list of "acceptable medical sources," the revisions are expressly *not* retroactive. *See* 20 C.F.R. §§ 404.1502(a)(7) & 416.902(a)(7) ("Licensed Advanced Practice Registered Nurse, or other

licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice (**only with respect to claims filed (see § 416.325) on or *after* March 27, 2017**) (emphasis added)); *see also Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (finding the ALJ has the discretion to determine the appropriate weight to accord the opinion from an "other source" such as a chiropractor).

Although nurse practitioners are not "acceptable medical sources" under the regulations for the purposes of the case at bar, Social Security Ruling ("SSR") 06-03p notes that information from "other sources" such as nurse practitioners "are important" and "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939 at * 2-3 (Aug. 9, 2006). A recent decision from within this district explained the ALJ's duties in connection with opinions from "other sources" as follows:

> In evaluating the opinions from "other sources," an ALJ should consider various factors, "including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citation omitted); *see* SSR 06–03P. The ruling's explanation of the consideration to be afforded "other source" opinions provides:
>
>> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, *the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinion may have an effect on the outcome of the case*. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and

reconsideration levels, if the determination is less than fully favorable.

SSR 06–03P, 2006 WL 2329939, at *6 (emphasis added).

Given this guidance, "it will rarely be enough for the commissioner to silently 'consider' the above-mentioned factors in deciding how much weight to give to an 'other source' who has seen the claimant in the source's professional capacity." *Estep v. Comm'r of Soc. Sec.*, Case No. 15cv10329, 2016 WL 1242360, at *3 (E.D. Mich. Mar. 30, 2016); *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) ("An ALJ must consider other-source opinions and 'generally should explain the weight given to opinions for these 'other sources[.]'") (alteration in original) (quoting SSR 06–03P). Rather, "[t]he Sixth Circuit has repeatedly recognized that the commissioner must make an adequate record of the commissioner's consideration of an 'other source' who has seen the claimant in the source's professional capacity." *Estep*, 2016 WL 1242360, at *3 (collecting cases); *Hatfield v. Astrue*, No. 3:07–cv–242, 2008 WL 2437673, at *3 (E.D. Tenn. June 13, 2008) (noting that "[t]he Sixth Circuit...appears to interpret the phrase 'should explain' as indicative of strongly suggesting that the ALJ explain the weight [given to an 'other source' opinions], as opposed to leaving the decision whether to explain to the ALJ's discretion") (citing *Cruse*, 502 F.3d at 541). **Still, "[s]o long as the ALJ addresses the opinion [from an 'other source'] and gives reasons for crediting or not crediting the opinion, the ALJ has complied with the regulations."** *Drain v. Comm'r of Soc. Sec.*, No. 14cv12036, 2015 WL 4603038, at *4 (E.D. Mich. July 30, 2015) (citing *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011)).

*Hirko v. Colvin*, No. 1:15cv580, 2016 WL 4486852 at *3 (N.D. Ohio Aug. 26, 2016) (Lioi, J.)

(emphasis added).

Here the ALJ clearly did not ignore nurse Krause's opinions, nor did the ALJ consider them in silence. The ALJ cites all three exhibits containing the opinions[5] at issue and provided the following explanation concerning the weight accorded to them:

The opinion of Robin Krause, A.P.R.N., C.N.S., C.N.P. warrants little weight because there is nothing in the record to support this overbroad and conclusory statement. It is acknowledged that the claimant has a treating relationship with Ms. Krause but she is not an acceptable medical source and is not supervised by one. She also indicates "marked" limitations but inconsistently documents the

---

[5]  Plaintiff acknowledges that the May 17, 2016 statement was "not eligible to receive special consideration by an ALJ as it was merely a brief statement indicating her belief that Ms. Britton is unable to work due to bipolar disorder." (R. 12, PageID #: 2169).

claimant's improvement with medication. (21F/2; 31F/2-3; 36F/1).

(Tr. 20-21).

Although the ALJ's explanation is admittedly brief, it is sufficient under the applicable rulings and regulations. The ALJ adequately considered those factors deemed relevant, such as the lack of a meaningful explanation (*i.e.* "conclusory statement") to support nurse Krause's opinions. In addition, the ALJ noted that the record reflects Plaintiff improved with medication, but that nurse Krause did not consistently document such improvement.[6] *Id*.

Plaintiff's reply brief takes issue with the ALJ's finding that nurse Krause's opinions were overbroad or conclusory. (R. 14, PageID# 2200-2201). She further takes issue with the contention that Plaintiff's mental impairments improved with medication. *Id*. To the extent Plaintiff takes issue with the ALJ's interpretation of the evidence or suggests that the evidence should be construed differently, such an argument is tantamount to an invitation for this court to reweigh the evidence and to assign greater weight to nurse Krause's opinions. This court's role in considering a social security appeal, however, does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and recommendation adopted*, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017). "When deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, we do not try the case *de novo*, resolve conflicts in evidence, or *decide questions of credibility*." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d

---

[6] Plaintiff's construction of the ALJ's statement as a finding that medications offered inconsistent relief is an untenable interpretation of the ALJ's statement. (R.12, PageID #: 2170).

709, 713 (6th Cir. 2012) (*quoting Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). The ALJ's characterization of nurse Krause's opinions as conclusory is accurate, as they consist primarily of checkbox or checklist opinions unaccompanied by any meaningful explanation for the limitations assessed. (Tr. 2038-2938, 2071). In addition, the ALJ's interpretation of the medical records, as consistently demonstrating improvement with medications is supported by substantial evidence. Though Plaintiff's improvement was not linear and uninterrupted, the bulk of the records, cited above, can reasonably be construed as documenting improvement.

Because the explanation requirement for considering "other source" opinions is not the equivalent of the treating physician rule, which is applicable only to *acceptable medical sources*, the court finds no deficiency with the level of explanation the ALJ provided regarding nurse Krause's opinion. Plaintiff's objection to the ALJ's explanation does not provide a basis for remand, nor will the court expand the explanation requirement to the more rigorous treating physician standard. *See, e.g., Moscorelli v. Colvin*, No. 1:15cv1509, 2016 WL 4486851 at **3-4 (N.D. Ohio Aug. 26, 2016) (Lioi, J.) (observing that a thin explanation that would not constitute a good reason for discounting a treating source's opinion may, nevertheless, satisfy the explanation requirement for a non-treating source). While a claimant may disagree with the ALJ's explanation as to why little weight was assigned to a non-acceptable medical source, such a disagreement with the ALJ's rationale does not provide a basis for remand.

Therefore, the court recommends finding Plaintiff's first assignment of error to be without merit.

### 2. Weight Ascribed to State Agency Physician

In the second assignment of error, Plaintiff asserts the ALJ did not properly consider the medical opinion of State Agency medical consultant Dr. Sutherland. (R. 12, PageID# 2170-

18

2173). Specifically, Plaintiff takes issue with the ALJ failing to specifically address Dr. Sutherland's opinion that Plaintiff be limited to occasional overhead reaching bilaterally and to avoid concentrated exposure to extreme cold and vibration. (*Id.*, *citing* Tr. 98-99). It is undisputed that Dr. Sutherland never treated Plaintiff, and Plaintiff concedes that the "good reasons" requirement of the treating physician rule is inapplicable to Dr. Sutherland's opinion. *Id.*

With respect to State Agency physicians, ALJs "are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists," but because said consultants are "highly qualified physicians, psychologists, and other medical specialists" an ALJ should consider their findings. *See* 20 C.F.R. § 416.927(e)(2). When considering these opinions, ALJs should look to factors such as the nature of the relationship (*i.e.* examining or non-examining or the frequency of examination), supportability, consistency, and other factors. 20 C.F.R. § 416.927(e). Furthermore, the regulations mandate that "[u]nless the treating [physician's] opinion is given controlling weight, the [ALJ] must ***explain*** in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(e)(2)(ii) (emphasis added).

An ALJ, when arriving at the RFC assessment, "must always consider and address medical source opinions [and] [i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996); *see also Puckett v. Colvin*, 2014 WL 1584166 at *9 (N.D. Ohio April 21, 2014) (Vecchiarelli, M.J.) (explaining that, although the ALJ was *not* required to evaluate

opinions of consultative examiners with the same standard of deference as would apply to an

opinion of a *treating source*, he was required to "acknowledge that [the examiners'] opinions

contradicted his RFC finding and explain why he did not include their limitations in his

determination of Plaintiff's RFC"); *Moscorelli v. Colvin*, No. 1:15cv1509, 2016 WL 4486851 at

\*\*3-4 (N.D. Ohio Aug. 26, 2016) (Lioi, J.) (observing that a "thin" explanation that would not

constitute a 'good reason' for discounting a treating source's opinion may, nevertheless, satisfy

the explanation requirement for a non-treating source).

  With respect to Dr. Sutherland's opinion, the ALJ did not address it individually, but

instead addressed all the State Agency opinions together as follows:

> Great weight is afforded to the State agency medical and mental health
> consultants' opinions, as they are consistent with the record as a whole, especially
> the objective evidence in this case showing rather benign clinical findings and
> improvement with treatment as well as the increased daily tasks in which the
> claimant continues to engage. (2A; 4A).

(Tr. 27).

  Plaintiff is correct that the ALJ does not specifically discuss Dr. Sutherland's occasional

bilateral overhead reaching restriction and the need to avoid concentrated exposure to extreme

cold and vibration. Further, it is undisputed that the RFC did not incorporate such limitations, as

such restrictions are plainly absent in the RFC finding. (Tr. 24-25). In *Kornecky v. Comm'r of

Soc. Sec.*, 167 Fed. App'x 496, 507 (6th Cir. 2006), the Sixth Circuit found that there was no

reversible error where an ALJ "merely failed to explain why he favored several examining

physicians' opinions over another's," noting it was harmless error. The *Kornecky* court explained

that "[n]o purpose would be served by remanding for the ALJ to explicitly address the

shortcomings of [Dr.] Lian's opinion and the evidence and methods underlying it." *Id.* (*citing

Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or

common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.")). The Sixth Circuit further reasoned that "[w]hile it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:

> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Kornecky*,167 Fed. App'x 496, 507 (*quoting Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) (citations and internal quotation marks omitted)); *accord Warsinski v. Comm'r of Soc. Sec.*, No. 13-14136, 2014 WL 6974670, at *2 (E.D. Mich. Dec. 9, 2014) ("There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record."); *see also Pierce v. Comm'r of Soc. Sec.*, No. 2:14-CV-1989, 2015 WL 6561950, at **4-5 (S.D. Ohio Oct. 30, 2015) (finding that ALJ's failure to acknowledge and explain a discrepancy between the opinions of two State Agency physicians was harmless error), *report and recommendation adopted*, 2015 WL 7888791 (S.D. Ohio Dec. 4, 2015).

Here, in contrast to Dr. Sutherland, State Agency physician Dr. Manos found Plaintiff had no manipulative restrictions and no environmental limitations. (Tr. 85). Thus, the ALJ implicitly resolved the conflict between the two State Agency physicians by adopting Dr. Manos's RFC recommendation. The ALJ's adoption of the less restrictive finding is consistent with the observation that there were "rather benign clinical findings …." (Tr. 27). Though undoubtedly it would have been preferable for the ALJ to expressly identify the discrepancy between the two State Agency opinions and affirmatively state that he was crediting Dr. Manos's opinion with

regard to the manipulative and environmental restrictions over that of Dr. Sutherland, no purpose would be served by a remand. *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6, 22 L. Ed. 2d 709, 89 S. Ct. 1426 (1969) (plurality opinion) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game")).

For the above reasons, the court recommends that the second assignment of error be rejected.

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: December 17, 2018

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).